Good morning, your honors. My name is Jeff Berg and I represent Ramsey Scarlett. I understand each one of you are familiar with the facts, but if you'd like me to go over them, of course I can if there's any questions regarding any facts that are in evidence at this point. What this case is about at this point is an abuse of discretion by both the ALJ, which was eventually confirmed by the BRB. The administrative law judges began this abuse by starting to jump to conclusions and not following the necessary standards of substantial evidence which was set by this court in several different opinions. The BRB, with the exception of Judge Boggs, who wrote a dissenting opinion, basically rubber-stamped the findings of the ALJ's decision. Throughout this case, as we go forward through each and every one of these issues that Ramsey Scarlett has raised in this case, what will be obvious is the ALJ abused its discretion by focusing their decisions on unsubstantiated facts, speculation, faulty inferences, and assumptions. As I read the opinion of the ALJ, it appeared that they were almost playing loose and free with the presumptions in place, and finding that an injury with the possibility of some type of evidence is enough. I believe this is a slippery slope where this type of abuse of discretion is occurring more often than not in the lower court levels. There must be some safeguards that this court has already put in place, and followed by Judge Boggs in his dissent, and we ask today that the court reemphasize those safeguards that have already been put in place when it relates to substantial evidence, and that there has to be some more than speculation at the ALJ level. When you say the majority disregarded our opinions defining what's sort of conclusory and speculative, whereas Boggs followed, what cases specifically, what is your best case that this type of evidence, the claimant's own testimony, direct testimony, plus the Patrick report, export report, isn't enough? What's our best case? I just want to know when you say that the majority didn't rely on our authority, what authority are you talking about? I'm talking about the authority that was based in Greenwich-Colliers, which is that there has to be something, that you have to be a prima facie case needs to be supported by credible and credited evidence, and I thought Price, the administrative law judge, had several paragraphs saying here's my weighing of the evidence. He did weigh the evidence, Judge Higginson, but there wasn't enough. It was only speculative and probable based on the testimony of- Well, that's, but be very exact. It wasn't speculative, then probable. It was definite, then probable. Understood. But that's maybe an important distinction. So you've got a claimant, he's been working for 20 years in the military before that, and he's saying, well, you know, originally in the off-site location, I was in clouds of asbestos, and then he comes back to the port, and he's saying, you know, I didn't see labels on the pallets that said asbestos, but I worked with the breaks, and those definitely had asbestos, and then he's asked to clarify, and he's a lay witness, and he said, and he's asked, well, what's your personal knowledge, and he can't say they had a label saying asbestos, but he said they probably all did, and you can impeach. That goes to the weight of his testimony, right? It's his personal knowledge. He doesn't see a label, but he's saying they probably all had asbestos, and I understood Price to say I credit his testimony. I've read his entire deposition, and then when you put that with the expert industrial hygienist who said, yep, that equipment then would have, that seems to me what he said was substantial evidence. Well, I disagree with Judge Price, and this is the basis of that disagreement. The disagreement is, yes, he was cross-examined, and that then puts some speculative information out there that is probable, and that he found this out in the information about asbestos later on. He didn't find it out at the time, or he talked to somebody, or there was any co-worker testimony to say, yes, those breaks, clutches on those cranes had asbestos in them. Right, but there are just dozens and dozens of opinions that are just assessing whether or not substantial evidence existed, and in these cases, it's, well, yeah, Navy ships then. You call in the industrial hygienist. I didn't know that's what they were called, who says, yeah, I assess workplace safety, and it's my opinion that all Navy ships then down in their boiler rooms had asbestos. That's sort of the only way you can do it, because the dock worker, if he doesn't see a label saying asbestos, he's going to have to honestly admit he didn't know for certainty. These cases are all like that, and so then we don't re-weigh the evidence, do we? You have to weigh the evidence, I agree. I don't think the weighing of the evidence was proper, and the reason why it wasn't, Mr. Parker's testimony is just based on his experience. It's very speculative, saying that most likely all brakes, all clutches had asbestos, just like all Navy ships had asbestos, but if it is a situation where an individual didn't work in a boiler room or didn't work in the engine room, he might not have been exposed to asbestos. There needs to be a little more, and that's Ramsey Scarlett's position, that there has to be a little more than just the speculative opinions of Mr. Parker, who is a certified industrial hygienist, but does not, has never visited the port of the greater Baton Rouge, has no idea, never met Mr. Fabre, and what's important, Your Honor, is that in Dr. Glenn Gomez, who's the pulmonologist in this matter, he took a history, a history prior to any lawsuits, any involvement with anyone, and the testimony there, which I believe is as credible as any other testimony that's in this case, is that he did not, Mr. Fabre, I hate using pronouns, but Mr. Fabre did not talk about exposure at the port of greater Baton Rouge. He only spoke about exposure at Sharp Station, which is not a situs and is not of any moment at this point in this case, that there were clouds of asbestos at Sharp Station, but there was no mention of that back in 2011 when he was first diagnosed with pulmonary problems. So you have to take that evidence, which from my understanding was virtually ignored by Judge Price. Isn't that a question of weight or credibility? It is. It is part of the credibility, but I don't believe Judge Price took all of the evidence at the same weight. This is a plaintiff's expert that testified and put down these documents in the medical records, and that was not mentioned in the opinion, and if it was, I may have overlooked it, but there was no weight given to that testimony. There was too much weight, and I think the abuse of discretion here is that they are relying on not the medical records that document no exposure at the port of greater Baton Rouge, or at least it wasn't mentioned, and taking an individual who's a certified industrial hygienist with somebody that's never talked to Mr. Fabre, never visited the site, to just make a general conclusion or statement that there is asbestos, and most likely in all breaks and clutches. But what is the best APA case that's saying an expert report is inadmissible or unreliable because the sources for the opinion, what's your best case, because he clearly relied on Parker. He says it again and again. The expert report sort of filled in. What's your best case that that was arbitrary? Judge, I don't believe there is a specific case that says that it's arbitrary in any sense. I mean, because you're saying he didn't have personal knowledge, right? He, Parker, didn't. Correct. But a lot of experts, there are experts that have personal knowledge, doctor who examines patients, but then there are other experts who look at the records in the case and opine, right? Correct. So, I take it he's just more like that. And so, if we were in the world of the rules of evidence, you'd be saying, we have a 704 problem here. What's the underlying source for your opinion? But you would have to request disclosure. You had the opportunity, I'm guessing, to cross-examine Dr. Patrick, right? Parker, yeah. Parker, sorry. No. We did. We did question him regarding his basis. Yes. And those bases. Do you feel like you impeached him in the court? We feel like we showed that there was not enough basis for his opinions. Now, his opinions are basically the same in every case. He doesn't visit these people. He doesn't go to the sites a lot of times. Some, he does. But the majority of the time, he doesn't. And that is exactly, as you've described, Judge, a credibility issue and weighing of the evidence. But I think what the case law says and the standards set by this court is that the judge should weigh all the evidence. And I think there was evidence that was ignored or not mentioned why it was discredited. But that sort of gets to your opportunity to rebut the presumption. Which I would. Which you did. Which we believe we did. But did you put anyone on to say there was no equipment in the port during those years that had asbestos? We did not put anybody on at the ALJ level reviewing all the records. We didn't put anybody on at that time to say that. What was your best piece of evidence rebutting that asbestos was in the port during his years? What was the best affirmative evidence you offered to rebut the presumption? The cross-examination. No, I'm asking affirmative evidence. Affirmative evidence. Affirmative evidence. Who'd you call to say anything like he couldn't have been exposed? We called both two corporate representatives, Mr. Levering and Mr. Heim. And they testified not having any knowledge of any exposure to Mr. Fabry. That was our affirmative evidence. They didn't know that he was exposed. But they never said the brakes and the equipment that he was fixing didn't have asbestos, did they? They didn't know that. They didn't know that. No different than if Mr. Fabry knew that. So now at this point, we have competing evidence. And if I'm correct... And that's where the ALJ appropriately begins to weigh all the evidence, to consider it. Isn't that right? Isn't that what's supposed to happen once you rebut the presumption? Yes, sir. And so your argument is that's not what happened here? That's not what the ALJ did. He did it, he didn't do it, or he didn't do it correctly? He didn't do it correctly by taking the body of evidence that was presented at the ALJ level and make a weighing of the evidence of each and every witness, each and every document. It appeared to me, and it's my opinion, that he took the evidence most favorable to the claimant and ignored the things that we presented. Well, we're just looking at whether there's substantial evidence. Didn't Parker testify that at the point in time that Fabry said he was at the port, that it's well-documented that clutches and brakes had asbestos, and that if workers worked on clutches and brakes, it's again well-documented that workers would be exposed to asbestos. Was that in the record or not? I think the precise statement, if I may, is that most likely was in those brakes and clutches. But what is important, I think, to our point is that OSHA came into effect in 1972-73. And at that time, because OSHA was enacted, asbestos was being removed, and there were a lot of changes that went on in the workplace. Specifically, when you get to 1976 and thereafter, a lot of asbestos was removed. But in that connection, counsel, the evidence you offered was that the OSHA guidelines went into effect. You didn't offer any evidence specifically about what was done at this location pursuant to those guidelines, did you? No, I didn't. No, we didn't. We did not do that. And what about brakes and clutches? I mean, I thought asbestos was in brakes and clutches well after that. And most of it was encapsulated later on. But yes, there was still asbestos in brakes and clutches. But that's where the substantial evidence becomes an issue, because there is no substantial evidence on the part of the claimant to show that those gaskets had asbestos or did not have asbestos. Well, those gaskets are long gone, I mean. Correct. I don't see your statement that Parker's report said most likely or most probably. I'm reading the report. When he was transferred to the Port of Greater Baton Rouge, his occupational exposures continued, although most likely the exposure concentrations were less. If you give me a moment, Judge, I believe I'm running out of time. And then in his conclusion, his last exposure most likely occurred when he repaired asbestos-containing brakes. That's what you're focusing on, the most likely there? That's correct, I believe, without looking back. Exactly. That's my understanding, that there was some most likely. That was the language I was referring to. I believe I'm out of time. I'll save any other arguments or any other questions for my five minutes rebuttal. Thank you. Good morning. My name is John Dillon, and I represent the claimant respondent in this matter. And I jotted down some notes with respect to some of the questions that were asked, and I'm not sure that they were answered. And there is a level of deference that occurs once an ALJ has made a decision. We're familiar with that. There's got to be more than speculation. Let's get right to the record. This is a site where the claimant worked a state location, Sharp Station, and had not just high exposures, these were tremendous exposures. These were, the asbestos manufacturing facilities had practices in place to try to curtail exposures of this magnitude. Nothing was done at the state site. Even though they were working for a government contractor, it would have been responsible to follow the federal guidelines. This is when he put the 3M mask on. That's correct. The other aspect of this is the companion site, the Port of New Orleans, where he was working during the same time period, with some exceptions, was the terminal where all this asbestos was received. And the same working conditions under the Longshore Act at that terminal had the same requirements to follow Wall Scheele. True, but he admitted he wasn't handling the bales there, right? That's correct. So that's the difference. It's a transshipment point, but it ends up at the off-site location where he's in clouds of it. That's correct. There's no doubt that there's an elephant worth of exposure under the State Act, and that the exposures are lesser under the Longshore Act. And that's why we filed two claims, because we weren't sure how the courts were going to deal with this question when they were presented with the facts. But under the Longshore Act, I don't have to prove relative causation. Only last injurious exposure or such a type of exposure that would be injurious in nature. And we believe that the testimony of the claimant and the evidence prepared by Frank Parker, the industrial hygienist, meet that standard. This is a case where there's no dispute about the diagnosis. There's no dispute about the exposure. I guess the difficulty to the case, you know, appropriately presented is that your client commendably was pretty honest. He said, you know, I knew I was in asbestos because there were labels, and it was all around me, and I put a mask on. Then I get to the other place, and honestly, I didn't see a label. That's correct. But it definitely was asbestos, and then again, like a lay witness, he's asked, how do you know? And he says, well, I guess it probably had to be. So what's the case where the claimant backs off because there isn't a label? That's not a conclusory, lacking personal knowledge? Well, it doesn't have a scientific basis. But it's sort of like anybody who worked with brake shoes in the 70s would understand and perceive that they were asbestos. But that's the theory that they're offering to say, well, this isn't even the last employer because Westway, he was working with brake shoes? Or no, he denied brake shoes? No, he stopped doing that particular mechanical work. He did vessel work, but it was at a different terminal involving liquid products. And he was very clear in his testimony about the materials he used that were identified. Could be. Could they be? He couldn't say. They were definitely different from the materials he was using when he was doing mechanical work at the general cargo terminal. And there is no proof of that. There was a hearing, but did the claimant testify in front of Bryce? Or was it just his deposition? No, it was just his deposition. Does that alter whether we give deference? I don't think it does. I think that the judge was impressed by the . . . it was a lengthy deposition. And the claimant was very, very clear cut in his testimony. And I think the judge . . . I don't want to sound hyper-technical, but in the 20-page report by Bryce, does he ever say, I've made a credibility call? I believe Bryce. He, as far as like, you mean the witness, the claimant himself? Does Bryce, the ALJ, ever say, this is really about credibility, and I can just trust this guy? The claimant? Yeah. Yeah, he doesn't come out right and say it. But he's obviously, in his analysis, giving credibility to the claimant. And that's how the claimant came across in this case. It's the kind of case where, you know, he didn't try to gild the lily in any of his explanations with respect to what was going on. And so his testimony was very straightforward and very . . . he tried to be factual and honest. And I think that came across to the judge. The other issue is the report by the industrial hygienist is just a report. There was no discovery aimed at the IH in the case by the employer. No discovery was taken at any time. And so under the relaxed rules of the APA, the report went into evidence as written. Counsel has ably put forth some characterizations about how he feels about this particular industrial hygienist, but he has a lot of experience with this particular site. And other claimants who have come from this site have been interviewed and deposed and depositions reviewed. Had discovery . . . you know, had he been cross-examined in a deposition or at the hearing, I think a lot of that would have been developed more fully. But for whatever reason, Ramsey Scarlett chose not to do it. We chose the economical approach to pay for a report and use the claimant's testimony along with the undisputed medical records. And I think that the judge found that that was sufficient evidence to support his findings. And that's probably based on his experience with similar cases that have come before the court over the years from this site. The problem with this facility is that no implementation of OSHA or Walsh-Healy safety regulations were utilized at either site. And no cleanup was conducted at either site. And that's a real problem where the bags are being brought in and then poured out to be inspected by the Agents for the Government Services Administration. And then they would be re-bagged. Now, all this would just be done in the confines of the warehouse without any safety practices or procedures. And that was done throughout the 60s. So when this gentleman comes in 1969 and sets foot in that warehouse, he's getting exposed. The question is, how much? And we don't know the answer to that. Because one of the jobs that the employer had was to monitor the air, to monitor the employees periodically, to follow these regulations, to give the employees some safety information and training. None of that was ever done at either of these sites. And this is more argument than fact in the record at this point. But the simple fact is that in his report, Mr. Parker is taking note of that fact, that none of these procedures were ever followed at the port and apparently not at Sharp Station either. And so there would be continuing exposure issues until some proper amount of time has passed. What was the total award minus the attorney's fees? The total award, for this case, it's just the medical benefits at this point. Which were, okay, just ongoing future medical benefits? Right. Now, at the time we tried this case, he was hospitalized due to pneumonia. So there are some medical bills that are still in play here, rather substantial amount. But that's not a part of the record here. This case is set for second hearing now because of impairment has set in. And the ALJ is going to hear that early next year. Hear what? I'm sorry, the what? Impairment is beginning to set in. And so that's part two of this. Technical question. You may not have first-hand recollection. But in the brief, one of the times you say there's evidence in this record of sporadic exposure, it's your footnote 19. And the record's a little hard in these administrative cases because they aren't digitally given to us. So trace back. You cite ROA footnote 13. Okay. I just, I couldn't find it. That may have been wrong. Because I'm looking at the record that I see here. And it's actually claimant's exhibit 9, which is on page 183, which would be the report by Frank Parker. Okay, that's the report. So the best evidence you've got supporting substantial evidence is Parker's report, plus that little exchange where he says definitely exposed. Then he's asked how does he know. And he says, well, back then.  Those are the two best pieces. I think so. Okay. I really, unless there's some other questions, I'll just go ahead and step down. Thank you for your time. Thank you. You may please the court again in just a brief rebuttal. I've listened to Mr. Dillon's argument. I listened to the questions as well. And the question, Judge Higginson, that you brought up regarding there's typically the same evidence at Westway that he may or may not have worked with clutches. He worked on the same type of cranes. I believe his testimony, he does say that he was around when some work was done. If the court allows the speculative nature of asbestos exposure at the Port of Baton Rouge, they should apply the same standard to Westway. And there's as much evidence of any exposure at Westway as there is at Ramsey Scarlet. Obviously, it wasn't touched by Mr. Parker. But who's to say, as Judge Owen mentioned, that she understands that brakes and clutches may have had asbestos after the enactment of OSHA. I think it's the same type of thing. They're not weighing the evidence that's basically ignored regarding Westway. So if you start using one argument and discrediting the other possibility of exposure, because Mr. Fabry didn't know back then either. I think that there's almost a double standard there. One of the issues we raised in our briefs that is cited in, I believe, the Saris case, C-E-R-E-S, is that we don't have to prove a deficiency of the claimant's case, but advance evidence to throw factual doubt on the prima facie case. We believe that we've done that by the cross-examination as being the best evidence of it's possible or probable. I think it was more possible, is what Mr. Fabry said, of asbestos in there. And the lack of credibility that was taken to the medical records of Dr. Gomez. The substantial evidence rule, I believe, is what this court is looking at. I don't think that there was substantial evidence presented at the ALJ level to rise to a prima facie case in a presumption that there is an injury, as well as it was caused at the Port of Greater Baton Rouge. Finally, your honors, at this point I believe that any other discussions regarding some of the other issues that we raised. I think it's all moot when it comes to medicals and the value of the medicals if you don't find a prima facie case. We can touch on that briefly. But ultimately, we want to reemphasize that there are, and especially in Judge Boggs' dissent, that there is a missing link here. That link has never been connected by the claimant. The Judge Boggs states that there were three separate inferences that were drawn by Judge Price. The repair of the asbestos containing breaks and clutches exposes workers to asbestos. Claimant repaired the breaks and clutches, therefore a claimant was exposed to asbestos. There's a missing link there. We believe Judge Boggs got it right when she reviewed this ALJ decision from the BRB. And I think that there hasn't been credible and credited evidence at this point to prove that Mr. Fabry was exposed at the Port of Great Baton Rouge. We're clear, and that Mr. Dillon mentioned it, that there is a state comp claim. That state comp claim is very strong because of this sharp station. He also has a tort suit that's been filed in the 18th JDC as well. So at this point, he is covering all his bases, and I don't blame Mr. Dillon for doing that. But this one, out of the three possible cases, we believe is the weakest connection. There's no nexus between the possibility of asbestos breaks and therefore we believe that the ALJ's decision and the BRB's confirmation of that should be reversed. I don't believe we should file a Judge Boggs decision to bring it back to the ALJ. I think the ALJ has made the decision, has missed- Boggs wanted to send it back, right? Boggs wanted to send it back for more information. She found there wasn't a link and given the claimant a second bite at the apple. I don't think that's the case. I think he presented what he had, and at this point, that's it. And this court should rule in Ramsey Scarlet's favor. Thank you very much.